Four», J.
This was an action of indebitatus assumpsit, to recover toll owing to the Turnpike Company, for the passing of the Exchange line of stages through their gate in the years 1825 and 1826; brought against John, Jacob and Isaac Gulick, as surviving partners of John Gulick and sons, in consideration of the Turnpike Company having permitted the line to pass through the gate, at the request of said firm. It appears that the firm had carried on such a variety of business, in trading, staging, milling and farming, as to have acquired the reputation of being almost a universal partnership: but still it had no concern, as a firm, in the Exchange line of stages, though each one of the members had a separate individual interest therein, in connection with many other part owners, scattered along between New York and Philadelphia, but not generally known; and the gate keeper had strict orders from the Turnpike Company, to close the gate against every line of stages, until some responsible person, or persons should undertake for the payment of the toll. Under these circumstances, John Gulick, senr., requested the gate keeper to let the Exchange line of stages pass through the gate, and to charge the toll for it to John Gulick and Sons. In this manner the line passed through the gate in 1825 and 1826, with the knowledge of the members of the firm, and the jury found for the Turnpike Company, to the amount of the toll.
The defendants now move for a new trial, upon various grounds — that the firm of John Gulick and Sons, was actually dissolved prior to the year 1825, and was incapable of any legal act. That the contract was not within the scope of the partnership concern, and therefore that the act of one member of the firm, was not binding on the others. That the undertaking was void by the statute of frauds; and that being in its nature a spe *163 eial agreement, it must be laid as the foundation of the action : the plaintiffs could not waive it, and resort to an implied contract.
1. It appears to have been sufficiently proved at the trial, that the partnership of John Gulick and Sons, was certainly dissolved, at least as to most of their general concerns, prior to the year 1825, by the agreement of all the members of the firm; and in consequence of it, that the leading branches of their former business had been exclusively taken, to be conducted by new and distinct associations: and that this dissolution, though the private act of the members, and never published in a formal manner, appears to have been well known, and that to several persons who testified to their knowledge of the fact. But it did not appear to have been known to other persons; and in particular it was unknown both to the treasurer and to the gate-keeper of the Turnpike Company, as they distinctly testified at the trial, and there was no contrary evidence, to discredit their testimony on this point. Now it is an established rule, that if a partnership once existed, it will be considered in law, notwithstanding an aiu cement among its members for a dissolution, to be still in being and continuance, with respect to all persons who act under a bona fide belief of its continuance, having no notice to the contrary. Lord Mansfield said, in the case of Fox v. Hanbury, Cowp. 449, “If partners dissolve their partnership, they who deal with either, without notice of such dissolution, have a right against both;” and in 3 Stark. Evid. 1078, “ It is sufficient if the plaintiff prove a partnership anterior to the contract, for when the partnership is once established, a continuance of it, is to be presumed, until notice of a dissolution is given to the plaintiff.” Now there was no evidence direct or circumstantial, that the Turnpike Company had any notice of the dissolution of this firm ; on the contrary there was positive proof, by the oaths of the treasurer and gate-keeper, that they ne%mr heard of the fact of a dissolution, though they lived in the neighborhood of all the members. Indeed there were some leading circumstances to induce a belief, that though the partnership curtailed its business by renouncing some of its former pursuits to other associations, yet that the members intended, for some purposes, that the old firm should still continue to exist. And the jury had circumstan *164 ces from which to draw this inference, if they pleased, without any power of the court to prevent it. Thus it appeared that John Gulick, senr., the head member of the firm, dealt with the Turnpike Company as late as the year 1826, in the name of John Gulick and Sons; and to suppose that he did so, knowing, that there was no such partnership in existence, and that he was obtaining their money by means of a false pretence (commonly called swindling, and amounting to an indictable offence) would be uncharitable indeed, when no conceivable motive of interest, nor any other known cause could have' incited him to that guilty action. The jury might, therefore, infer, though there were great changes in the business of the firm, yet the entire dissolution of it was as little known to him as to the Turnpike Company ; and yet he was the head member of the firm.- We are next to enquire what knowledge the sons had of this contract, from the circumstances of the case. Each one had a separate share in the profits of the Exchange Line, and consequently had to pay his share of the tolls; for they knew it run subject to toll, and that they neither paid daily nor in advance. Now might not the jury believe it incredible, that these business-men, in the space of two long years, should never have learned from their father, or from the treasurer or the gate-keeper, or in any other way, upon what responsibility their own line was running dáily through the gate ? If they knew it was doing so upon the credit of John Gulick and Sons, and did not forbid the use of that name, but suffered it to go on as a valid act, and took the benefit of it in their line of stages, it amounted in law to a positive acquiescence as fully as if each one had given an individual consent. Their standing by and seeing th.e Turnpike Company trust out its money to John Gulick and Sons, and they themselves taking the' benefit of this trust, by the facility it gave to their line, aud not protesting against the use of that name, amounted in law, on their part, to an assent to the use of it, and bound them just as muchas it bound their father. Therefore, if it be once established that they knew their line was passing through the gate on the credit of John Gu-Uck and Sons, it concludes this whole dispute respecting a dissolution of the firm. But the evidence of their knowledge rested on a firmer foundation than even the violent presumption before stated; it became a matter of fact. The account of toll was made *165 up monthly against John Quliok and Sons, and delivered to the firm in writing, as the treasurer testified; but sometimes when the proprietors of the Exchange Line were about assembling for settlements among themselves, one of the sons applied for this account, and the sons received an allowance for it of the proprietors as money paid by John Quliok and Sons for the toll of the line. Now if the existence of a firm can be established by the acts and conduct of the members, there was evidence enough of the existence of this firm in 1825 and 1826, to vindicate the verdict from all imputation. If it had been the other way, there would have been much better ground for setting it aside. Whether certain facts will establish the existence or continuance of a partnership is a question of law, 3 Stark. Evid. note (d.) but this need not be discussed as a point of law, seeing the jury have found it a matter of fact, that the partnership of John Gulick and Sons, was not dissolved as far as respects this matter, though it might have been as respected the store and perhaps some other things.
2. It is next insisted, that a contract to pay toll for a line of stages belonging to strangers, did not come within the scope of their partnership business, and one partner cannot bind the rest, for matters extraneous to the concern. But how are strangers to know what matters are and what are not within the scope of private articles of partnership ? Nothing prevented the members, if they were so inclined, from making the payment of this toll, a partnership business, and it is a settled rule of law, t-hat the acts and conduct of the members of a firm, are good evidence in favor of strangers, who are not cognizant of the private objects of a partnership, and are to be guided by external indications 3 Stark. Evid. 1066. Now the father directed the account to be kept against John Gulick and Sons; a conclusive indication that he deemed it to be within the scope of the partnership. Then the Sons knew it was so kept without objecting to it; nay suffered the money of tlx- Turnpike Company to flow for two years into the hands of John Gulick and Sons, and carried it in against the Exchange Line, as a valid account; and these external indications are sufficient in law, as it respects strangers, to preclude them from saying that it was not within the scope of their partnership. Any thing was within it, that they consented to make *166 so, and these indications may well justify the verdict of the jury.
3. It is next insisted that this being a special agreement, the action ought to be founded upon it; that the plaintiffs cannot waive it, and sue on an implied assumpsit. But why not? If one purchase a yard of cloth, and promise to pay the price, this promise is just what the law implies, and an action lies either on the promise expressed or the promise implied ; for they are not variant; and a performance of either, performs the other. But where the express promise differs from the implied one, it must necessarily be set out in order to prove and enforce it. If a person gets a carriage let through a turnpike gate at his request, the law implies a promise that he will pay the toll, whether he is the actual owner of the carriage or not, the same as if he got it passed over a toll bridge or set over a ferry; and as the law implies a promise, it affords a remedy upon it.
4. It is next argued that this contract is void under the statute of frauds, being a promise, not to pay a debt of John Gulick and Sons, who as a firm had no interest in the stage; but to pay a debt of the proprietors of the Exchange Line,,who are third persons, and as it was not put in writing and signed by the firm, it cannot be enforced against them. Now there is no doubt but that every time. the stage passed through the gate, a debt was incurred by some body ; but that it was not incurred by the unknown proprietors of the line is evident, for the Turnpike Company gave a refusal in writing to trust them, and the law will never imply a promise contrary to the agreement of the parties; consequently the proprietors owed no debt to the Turnpike Company, nor can it maintain an action against them. Therefore the undertaking, of the firm was not to pay the debt of any other persons ; it is an original debt of their own. He who passes a carriage through a gate, at Ms request, no matter whether he is the actual owner, hirer or borrower, has the patronage of it at the time, and becomes the owner so far as respects the gate-keeper. So that this promise cannot possibly be brought within the statute of frauds.
5. It is finally insisted that the Chief Justice misdirected the jury. He first put the question to them fairly, whether there was a dissolution of the firm and notice thereof to the plaintiffs; and then told them that the guaranty would stand good, not *167 withstanding such dissolution and notice, until there was express notice given by the firm, that it would no longer be security for the toll. Now I confess that direct notice of a dissolution, appears to me to be express notice that the firm will not incur any future responsibility as partners. But a misdirection is no ground for a new trial, unless it affects the justice of the ease. The Court declared in Edmonson v. Machell 2 Ter. Rep. 4, that “ where a new trial is moved for on the ground of misdirection in point of law, if the Court see that justice has been done between the parties, they will not set aside the verdict nor enter into a discussion of the question of law.” So according to Buller J. in Estwick v. Cailland. 5 Ter. Rep. 425; “ the only question is whether under all the circumstances of the case, the verdict be or be not according to the justice of the case; for though the Judge may have made some little slip in his directions to the jury, yet if justice be done by the verdict, the Court ought not to interfere and set it aside.” Now the views which I have before taken of all matters set up by the defendants, shew that they have no just defence, either in law or in fact; and that the verdict does entire justice between the parties; therefore to set it aside, merely for discussing an immaterial point of law, which, being found right or wrong, cannot vary the justice of this case, would be an injury to both parties, and on the whole case, the rule to shew cause ought to be discharged.